1

2

3

4

5

6

7  **UNITED STATES DISTRICT COURT**

8  **DISTRICT OF NEVADA**

9

10  STEPHEN P. QUINN, an individual,

11       Plaintiff,                                    Case No. 2:09-cv-00588-KJD-RJJ

12  v.                                                 <u>ORDER</u>

13  JAMES THOMAS, an individual; JIM
    THOMAS & ASSOCIATES, a Nevada
14  licensed private investigation firm; LAS
    VEGAS METROPOLITAN POLICE
15  DEPARTMENT, a political subdivision of
    the State of Nevada; KAI DEGNER, an
16  individual; PAUL OSUCH, an individual;
    DOE POLICE OFFICERS I-X, in their
17  official and individual capacities; STATE
    OF NEVADA; NEVADA DEPARTMENT
18  OF MOTOR VEHICLES EMPLOYEES
    XI-XX, in their official and individual
19  capacities; DOES XXI through XXX,
    inclusive, ROE BUSINESS ENTITIES
20  XXXI through XL,

21       Defendants.

22

23       Presently before the Court is Defendants James Thomas and Jim Thomas & Associates'

    Motion for Partial Summary Judgment (#23).  Plaintiff filed a response in opposition (#33) to which
24
    Defendant replied (#39).
25

26                                                    1

**I.  Facts and Procedural History**

Plaintiff Stephen P. Quinn ("Quinn") brought the present action against James Thomas and Jim Thomas & Associates ("Thomas" or "Defendant") in state court (#1, Exhibit B).  Las Vegas Metropolitan Police Department ("LVMPD"), Co-Defendant, subsequently filed a petition to remove the case on March 30, 2009 (#1).  Plaintiff's amended complaint brings claims against Thomas for negligence, defamation and defamation per se, tortious invasion of privacy, intentional infliction of emotional distress, punitive damages, and for violation of the Federal Driver's Privacy Protection Act.

The allegations in the complaint arise from the private investigation of Plaintiff performed by Defendant.  Defendant performed the investigation at the request of Jeffrey Guinn ("JG"), who was being sued by Plaintiff in a separate, state court defamation lawsuit, Case Number A519586. Plaintiff learned about Thomas's investigation activities during discovery in that lawsuit (#88, ¶31). Plaintiff subsequently brought the present action against Defendant.

As part of the private investigation, Defendant recorded locations visited by Plaintiff and what he did at those locations (#33, Exhibit 2, p.91).  Defendant or his employees also monitored the vehicles that came to Plaintiff's home and business, recording the license plate numbers so that the criminal history of the auto owner could be obtained.  Using the license plate numbers, Thomas, a retired police officer, obtained criminal history and other personal information about those who came to Plaintiff's home or business, as well as information about Plaintiff himself (#33, Exhibit 3, p. 66). Using this and other information he gathered personally, Thomas compiled and submitted investigative reports to JG (#33, Exhibit 4).  These reports included Quinn's social security number and a summary of Quinn's criminal history, which indicated that he had no arrests (#33, Exhibit 3, p.21).  The reports also included Thomas's inferences about possible criminal activity or other factors based upon the drivers' criminal history.

2

1       LVMPD's Office of Internal Affairs performed an internal investigation showing that Officer

2    Paul Osuch ("Osuch") had provided criminal history information to a private investigator (#29,

3    Exhibit B).  After the present action had already commenced, LVMPD sent a letter to Plaintiff,

4    acknowledging that his private information, including his social security number, had been

5    compromised (#38, Exhibit 4).

6    **II.  Standard for Summary Judgment**

7       The Court should grant summary judgment "if the pleadings, the discovery and disclosure

8    materials on file, and any affidavits show that there is no genuine issue as to any material fact and

9    that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2); see also,

10   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of

11   showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.

12      The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

13   genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

14   587 (1986); Fed. R. Civ. P. 56(e).  "[U]ncorroborated and self-serving testimony," without more, will

15   not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha

16   Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a

17   party who fails to make a showing sufficient to establish the existence of an element essential to that

18   party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

19   **III. Defamation and Defamation Per Se**

20      Plaintiff's defamation claims fail as a matter of law.  To sustain a claim for defamation, a

21   plaintiff must demonstrate "(1) a false and defamatory statement by defendant concerning the

22   plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence;

23   and (4) actual or presumed damages."  Chowdhry v. NLVH, Inc., 851 P.2d 459 (Nev. 1993) (citing

24   RESTATEMENT (SECOND) OF TORTS, § 558 (1977)).  A statement of opinion, however, is not

25   actionable.  Nevada Indep. Broad. Corp., v. Allen, 664 P.2d 337 (Nev. 1983).  The Nevada courts use

26

1    an objective standard to determine whether a statement is one of fact or of opinion: "[W]hether a

2    reasonable person would be likely to understand the remark as an expression of the source's opinion

3    or as a statement of existing fact."  Id. at 342.

4        A reasonable person would understand Defendant's comments in his investigative reports as

5    statements of opinion.  The reports include detailed descriptions of vehicles coming to Plaintiff's

6    residence and business, including license plate numbers.  Based upon criminal history information

7    connected to the license plate numbers, Defendant used words such as "believe," "belief," and

8    "appears" to express his opinions about what that data meant.  (#23, Exhibit E, p. 7, Exhibit F, p.2).

9    A reasonable person would not interpret, as a statement of fact, an expression that includes phrases

10   such as "I believe," "it appears," or "this adds to my belief."  See id. at 337.  These expressions are

11   not actionable because the First Amendment protects Defendant from any defamation claims arising

12   from his statements of opinion.  See id. at 342.  Because Plaintiff has not raised a genuine issue of

13   material fact regarding a defamatory statement, the Court grants summary judgment on Plaintiff's

14   defamation claim against Defendants Thomas and Jim Thomas & Associates.

15       Because the Court concludes that Thomas did not make a defamatory statement, the Court

16   grants summary judgment on Plaintiff's claim for defamation per se.  If a "defamatory

17   communication imputes a 'person's lack of fitness for trade, business, or profession,' or tends to

18   injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed."

19   Clark County Sch. Dist. v. Virtual Educ. Software, Inc., 213 P.3d 496, 503 (Nev. 2009).  Because

20   Plaintiff failed to raise a genuine issue of material fact regarding a defamatory communication, the

21   Court grants summary judgment on Plaintiff's defamation per se claim against Defendants Thomas

22   and Jim Thomas & Associates.

23   ///

24   ///

25   ///

26

4

1    **IV.  Tortious Invasion of Privacy**

2          **A.  Invasion of Solitude or Seclusion**

3          Plaintiff's invasion of solitude claim fails as a matter of law.  To recover for the tort of

4    invasion, a plaintiff must demonstrate the following:  "1) an intentional intrusion (physical or

5    otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a

6    reasonable person."  People for Ethical Treatment of Animals v. Bobby Berosini, Ltd., 895 P.2d

7    1269, 1279 (Nev. 1995).  Not every invasion of a plaintiff's personal space will permit recovery.  "In

8    order to have an interest in seclusion or solitude which the law will protect, a plaintiff must show that

9    he or she had an actual expectation of seclusion or solitude and that that expectation was objectively

10   reasonable."  Id.

11         A person has no expectation of privacy if her actions or words can be readily seen or heard by

12   a passerby.  Id. at 1281.  In PETA, the Nevada Supreme Court cited two cases that support this

13   conclusion.  In Kemp v. Block, a trial court held that a plaintiff had no reasonable expectation of

14   privacy when he got into a loud argument in a retail business.  607 F.Supp. 1262 (D.Nev 1985).

15   Likewise, in McLain v. Boise Cascade Corp., a plaintiff had no expectation of privacy where his

16   activities could have been seen by a passerby or by neighbors.  533 P.2d 343, 346 (Or. 1975).  A

17   plaintiff would not have an invasion of privacy claim, for example, against a photographer who takes

18   photographs of the plaintiff in a public place.  PETA, 895 P.2d at 1281.  Some examples of places

19   that a person might traditionally have a reasonable expectation of privacy include a private bedroom,

20   hospital room, or a restroom.  Id. at 1282 (citations omitted).

21         Here, Plaintiff had no expectation of privacy in those locations where Defendant performed

22   surveillance.  Defendant performed surveillance on activities of the Plaintiff which could have been

23   seen or heard by any passerby.  Plaintiff does not have a reasonable expectation of privacy in the

24   street in front of his home or in the parking lot next to his place of business.  Defendant never

25   performed surveillance of Plaintiff's home itself because of the high walls surrounding it.  (#23,

26
                                                 5

1    Exhibit 2, p. 102).  The only activity Defendant could monitor was the coming or going of Plaintiff

2    on the street.  Id.  Because Defendant observed activity that any passerby or neighbor could have

3    easily seen, Defendant did not intrude upon the seclusion of Plaintiff.  See McLain, 533 P.2d at 346.

4    Because Defendant did not intrude upon the seclusion of Plaintiff, the Court grants summary

5    judgment on this claim against Defendants Thomas and Jim Thomas & Associates.

6            **B.  Public Disclosure of Private Facts**

7            The Court rejects Plaintiff's claim for tortious invasion of privacy because he has not

8    established that there was a public disclosure.  "To maintain a cause of action for public disclosure of

9    private facts one must prove that a public disclosure of private facts has occurred which would be

10   offensive and objectionable to a reasonable person of ordinary sensibilities."  Montesano v. Donrey

11   Media Group, 668 P.2d 1081, 1084 (Nev. 1983).

12          To make a public disclosure, one must do more than communicate private information to a

13   single person or a small group of individuals.  Kuhn v. Account Control Tech., Inc., 865 F.Supp

14   1443, 1448 (D.Nev. 1994) (quoting RESTATEMENT 2D (SECOND) OF TORTS §652D (1977)).

15   Therefore, because the invasion of privacy tort protects against public disclosure, the person making

16   the disclosure must do so through public means.  According to RESTATEMENT (SECOND) OF TORTS

17   §652, "One who gives publicity to a matter concerning the private life of another is subject to

18   liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be

19   highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."

20          A comment to section 652 of the RESTATEMENT clarifies that private information is

21   publicized when "the matter is made public, by communicating it to the public at large, or to so many

22   persons that the matter must be regarded as substantially certain to become one of public

23   knowledge."  Id. at cmt. a.  This includes "[A]ny publication in a newspaper or a magazine, even of

24   small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the

25

26                                                    6

1   radio, or statement made in an address to a large audience, is sufficient to give publicity within the

2   meaning of the term as it is used in this Section."  Id.

3          Here, Plaintiff did not establish that his private information was publicly disclosed.

4   Defendant did not disseminate private information about Plaintiff through public means.

5   Furthermore, the record does not support Plaintiff's allegation that Defendant sent his investigative

6   reports to JG with the expectation that they would be published.  On the contrary, Defendant testified

7   that he did not know what JG was going to do with the information.  (#33, Exhibit B, p. 94, ln. 24).

8   Plaintiff has only demonstrated that Defendant gave the investigative reports to one person, JG.

9   Because there was no public disclosure, the Court grants summary judgment on this claim against

10  Defendants Thomas and Jim Thomas & Associates.

11  **V.  Intentional Infliction of Emotional Distress**

12         Plaintiff's intentional infliction of emotional distress ("IIED") claim against Defendant fails

13  as a matter of law.  A plaintiff who seeks to make this claim must establish "(1) extreme and

14  outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress,

15  (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate

16  causation."  Star v. Rabello, 625 P.2d 90, 92 (Nev. 1981).  Plaintiff fails to raise a genuine issue of

17  material fact regarding extreme and outrageous conduct on the part of Defendant.

18         Nevada courts look to the RESTATEMENT (SECOND) OF TORTS for guidance in interpreting

19  IIED claims.  See, e.g., Star, 625 P.2d at 92, Olivero v. Lowe, 995 P.2d 1023, 1027 (Nev. 2000).

20  According to RESTATEMENT (SECOND) TORTS § 46, cmt. d, behavior that is "tortious or even

21  criminal" is not necessarily extreme and outrageous.  "Liability has been found only where the

22  conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible

23  bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

24  Id.

25

26

7

1      For example, in Branda v. Sanford, the Nevada Supreme Court held that the plaintiff had

2   sufficiently stated a claim for IIED where the plaintiff, a minor, alleged that the defendant "verbally

3   accosted her with sexual innuendoes and became verbally abusive when she ignored his remarks."

4   637 P.2d 1223, 1224 (Nev. 1981).  The defendant allegedly screamed expletives at the plaintiff at her

5   place of work, allowing her co-workers and patrons to witness the incident.  Id.  The conduct in

6   Grimsby v. Samson was even more extreme.  530 P.2d 291 (Wash. 1975).  A doctor refused to treat a

7   patient in a hospital, despite requests from the patient's husband to do so.  As a result, the husband

8   was forced to watch helplessly as his wife died in agony.

9      Here, Defendant's investigative conduct may have been unwelcome, but Defendant's conduct

10   was not extreme, outrageous, or atrocious.  This is so especially in comparison with the cited cases.

11   Although Defendant improperly obtained Plaintiff's criminal history and other confidential

12   information, this conduct was not extreme and outrageous.  See RESTATEMENT (SECOND) TORTS §

13   46, cmt. d.  Furthermore, the criminal history search did not reveal any damaging information about

14   Plaintiff (#33, Exhibit 3, p. 21).  This fact supports the Court's finding that the conduct was not

15   extreme or outrageous.

16      Moreover, the Court also notes that Plaintiff was not even aware of Plaintiff's surveillance

17   activities when they took place (#88, p. 7, ¶31).  It was only afterwards that Plaintiff learned about

18   Defendant's surveillance.  Id.  In the court decisions that have held defendants liable for IIED, the

19   plaintiff was cognizant of the extreme and outrageous behavior while it was taking place.  See e.g.,

20   Star v. Rabello, 625 P.2d 90, 92 (Nev. 1981), Grimsby, 530 P.2d 291, Branda, 637 P.2d 1223.  In the

21   instant action, however, Plaintiff was not contemporaneously aware of the surveillance activities of

22   the Defendant.  This distinction strongly supports the Court's finding that the alleged conduct was

23   not extreme or outrageous.

24      Furthermore, Plaintiff has not sufficiently established that he has suffered severe emotional

25   distress.  "[T]he less extreme the outrage (as in this case) the more appropriate it is to require

26
                                                    8

1    evidence of physical injury or illness from the emotional distress." <u>Alam v. Reno Hilton Corp.</u>, 819

2    F.Supp. 905, 911 (D.Nev. 1993).  Likewise, plaintiff needed to submit evidence of physical injury or

3    illness.  The only piece of evidence submitted with respect to Plaintiff's emotional distress is an

4    affidavit, wherein Plaintiff avers that he has experienced "extreme anxiety, constant fear for [his]

5    family's safety, paranoia, and depression" (#38, Exhibit 5, ¶9).  The Nevada Supreme Court rejected

6    a similar claim where the plaintiff did not seek medical or psychiatric help and did not provide

7    objectively verifiable evidence of emotional distress.  <u>Miller v. Jones</u>, 970 P.2d 571, 577 (Nev.

8    1998).  The Miller court held that the district court properly granted summary judgment because of

9    this lack of evidence.  <u>Id</u>.  Here, like the plaintiff in <u>Miller</u>, Plaintiff Quinn did not seek medical or

10    psychiatric help, nor did he provide objectively verifiable evidence of his emotional distress.

11    Therefore, the Court grants summary judgment on Plaintiff's IIED claim against Defendants Thomas

12    and Jim Thomas & Associates.

13    **VI. Punitive Damages**

14        Plaintiff has failed to demonstrate by "clear and convincing evidence" that Defendant "has

15    been guilty of oppression, fraud or malice, express or implied…." N.R.S. 42.005.  The language of

16    N.R.S. 42.005 "plainly requires that a defendant acted with a culpable state of mind…" <u>Countrywide</u>

17    <u>Home Loans, Inc. v. Thitchener</u>, 192 P.3d 243, 255 (Nev. 2008).  Therefore, N.R.S. 42.001(1)

18    "denotes conduct that, at a minimum, must exceed mere recklessness or gross negligence." <u>Id</u>.

19        Plaintiff failed to establish that Defendant performed his surveillance activities with fraud,

20    malice, or oppression toward Plaintiff.  Defendant indifferently investigated Plaintiff, without

21    knowing the purpose of the investigation.  (#33, Exhibit page 94, line 24).  Defendant performed the

22    investigation at the request of his client, rather than for his own personal interests.  Defendant did not

23    fabricate evidence reported in his investigative findings.  Because Plaintiff has not demonstrated with

24    clear and convincing evidence that Defendant was guilty of oppression, fraud, or malice, the Court

25    grants summary judgment on this claim against Defendants Thomas and Jim Thomas & Associates.

26

### VII.  Plaintiff's 56(f) Request for a Continuance

The Court denies Plaintiff's Rule 56(f) request for a continuance.  Plaintiff's counsel avers in an affidavit (#33, Exhibit 7) that additional time is needed for the deposition of Thomas, who he seeks to further question regarding "his actions, motives, knowledge regarding the dissemination of his investigative reports to individuals other than his client, and intentions in completing his investigation of Plaintiff Stephen Quinn."  (#33, Exhibit 7).

However, Defendant has already testified in his deposition about his intent in completing the investigation of Plaintiff.  Defendant testified "I didn't know Mr. Quinn from Adam.  I had no interest in Mr. Quinn.  I'm not out to destroy Mr. Quinn.  I was asked to do an assignment.  I did the assignment."  (#23, Exhibit 2, p. 88).  When Defendant was asked for what purpose he gathered information through surveillance, the Plaintiff responded "Somebody wants to pay me to do a surveillance, I do a surveillance."  Id. at p. 92.  Further testimony regarding Defendant's intent in completing the investigation is unnecessary.

Moreover, Defendant has also testified concerning the dissemination of his reports to individuals other than his client.  Specifically, the Court has already received evidence containing Defendant's testimony about the alleged dissemination of his reports to the police.  Defendant testified that he did not call his friends or anyone at the police department to request a narcotics investigation of Plaintiff.  Defendant testified that it was his client, JG, who called the police department about Plaintiff.  (#23, Exhibit 2, p. 159).  Defendant testified that "[JG] told me after the fact that he called Metro Narcotics.  I didn't know about that in advance." (#23, Exhibit 2, p. 179).  Further testimony regarding the dissemination will not affect the Court's present order.

Plaintiff's counsel also seeks to depose Officers Paul Osuch and Kai Degner regarding their alleged leak of SCOPE information to Defendant.  Even assuming that both officers will testify that they improperly provided SCOPE information to Defendant, this testimony would not augment Plaintiff's claims against Defendant.

1    Plaintiff's counsel also seeks to question Officers Osuch and Degner regarding the police's

2 narcotics investigation of the Plaintiff.  However, further testimony would not buttress Plaintiff's

3 claims against Defendant.  The Defendant testified that he did not know about the investigation until

4 it was initiated.  Defendant testified that he did not know that JG contacted the police department

5 about Plaintiff.  This testimony is corroborated by the fact that Defendant's own employee, while

6 performing surveillance of Plaintiff, was stopped and questioned by police during the narcotics

7 investigation (#23, Exhibit 2, p. 160).  Accordingly, the Court denies Plaintiff's 56(f) request.

8 **VII. Conclusion**

9    Accordingly, **IT IS HEREBY ORDERED** that Defendant Thomas's Motion for Partial

10 Summary Judgment (#23) is **GRANTED**.

11    DATED this 28th day of July 2010

12

13

14    _____
      Kent J. Dawson
15    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

11