# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| STEPHEN P. QUINN, an individual, | |
| Plaintiff, | Case No. 2:09-cv-00588-KJD-RJJ |
| v. | **ORDER** |
| JAMES THOMAS, an individual; JIM THOMAS & ASSOCIATES, a Nevada licensed private investigation firm; LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; KAI DEGNER, an individual; PAUL OSUCH, an individual; DOE POLICE OFFICERS I-X, in their official and individual capacities; STATE OF NEVADA; NEVADA DEPARTMENT OF MOTOR VEHICLES EMPLOYEES XI-XX, in their official and individual capacities; DOES XXI through XXX, inclusive, ROE BUSINESS ENTITIES XXXI through XL, | |
| Defendants. | |

Presently before the Court is Defendant Las Vegas Metropolitan Police Department's Motion for Summary Judgment (#29). Plaintiff filed a response in opposition (#38) to which Defendant replied (#48).

1

## I.  Facts and Procedural History

Plaintiff Stephen P. Quinn ("Quinn") brought the present action against Las Vegas Metropolitan Police Department ("LVMPD") in state court (#1, Exhibit B).  LVMPD subsequently filed a petition to remove the case on March 30, 2009 (#1).  Plaintiff's amended complaint brings a 42 U.S.C. § 1983 claim against LVMPD for violation of his Constitutional right to privacy. Additionally, the complaint brings state law claims for tortious invasion of privacy and intentional infliction of emotional distress.

The allegations in the complaint center around the private investigation of Plaintiff, which was performed by Defendant James Thomas ("Thomas").  Plaintiff learned of Thomas's investigation through discovery in a separate, state court lawsuit, Case Number A519586 (#38, Exhibit 5).  Quinn brought that lawsuit against Jeffrey Guinn ("JG") for defamation (#1, Exhibit B, p. 4, ¶13).  During the course of the defamation lawsuit, JG had requested that Thomas perform the investigation of Quinn.  Id. at ¶14.

Quinn's present complaint raises issues with several methods employed by Thomas in the investigation, but the only issue relevant to the present motion is Thomas's alleged obtaining of Plaintiff's personal information.  Thomas, a retired LVMPD officer, averred in his deposition that he obtained confidential criminal history and other personal information about Plaintiff from a friend working at LVMPD (#33, Exhibit 3, p. 66).  Using this and other information he gathered personally, Thomas compiled and submitted investigative reports to JG (#29, Exhibit A).  These reports included Quinn's social security number and a summary of Quinn's criminal history, which indicated that he had no arrests (#29, Exhibit A).

LVMPD's Office of Internal Affairs performed an internal investigation showing that officer Paul Osuch ("Osuch") had provided criminal history information to a private investigator (#29, Exhibit B).  After the investigation, LVMPD officials scheduled an interview with Osuch.  Osuch retired before he could be interviewed by LVMPD and declined further requests to do so.  Id.  After

1  the present action had already commenced, LVMPD sent a letter to Quinn, acknowledging that his
2  private information, including his social security number, had been compromised (#38, Exhibit 4).

## II.  Standard for Summary Judgment

The Court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c)(2); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.

The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## III.  Plaintiff's 42 U.S.C. § 1983 Claim

Plaintiff's 42 U.S.C. § 1983 claim against LVMPD fails as a matter of law.  Section 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Municipalities and other local government units are included in that group of "persons" referred to in § 1983.  Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978).  A plaintiff may establish municipal liability under § 1983 by demonstrating one of the following three factors:  1) a city employee violated Constitutional rights either pursuant to an official policy or informal practice

3

of the city, 2) the violator held final policy-making authority, or 3) a person with final policy-making authority ratified the unconstitutional behavior. Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).

### A. Violation Pursuant to an Official or Unofficial Policy

#### i. An Official Policy

Plaintiff fails to establish that an LVMPD employee violated his Constitutional rights "pursuant to official municipal policy." Monell, 436 U.S. at 691. "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. Therefore, "a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. The official-policy requirement for municipal liability under § 1983 distinguishes the acts of municipal employees from the acts of the municipality, thus determining whether the city is actually responsible for the violation. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Therefore, a "governmental entity is liable under §1983 only when the entity itself is a " 'moving force' " behind the deprivation." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citations omitted).

The plaintiff has not raised a genuine issue of material fact regarding an official LVMPD policy that allows or encourages its police officers to disseminate private information either to the general public or to private investigators. Although Thomas testified that he has in the past received private information from his friends at LVMPD (#38, Exhibit 3, p. 67), this testimony fails to establish that LVMPD maintained an official policy encouraging or allowing such behavior. Moreover, Thomas acknowledged that any LVMPD employee who gave him information would be violating a department rule. Id. at p. 71. Even if the Court accepts that an LVMPD officer illegally provided private information to Thomas, this finding would be insufficient for municipal liability

1  under § 1983.  To prevail on such a claim, Plaintiff would also need to establish that the LVMPD
2  employee did so pursuant to official policy.  Plaintiff has failed to do so here.
3        ii.  Unofficial Policy:  Widespread Practice or Custom
4      Even if a plaintiff cannot establish the existence of an official municipal policy, the plaintiff
5  may also establish municipal liability by demonstrating that the municipal employee acted in
6  accordance with a "longstanding practice or custom which constitutes the 'standard operating
7  procedure' of the local governmental entity." Jett v. Dallas Independent School District, 491 U.S.
8  701, 737 (1989) (quoting Pembaur, 475 U.S. at 485-87 (White, J., concurring)).  "[A] plaintiff may
9  be able to prove the existence of a widespread practice that, although not authorized by written law
10 or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage'
11 with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (citing Adickes v.
12 S.H. Kress & Co., 398 U.S. 144, 167-68, 90 (1970)).
13     Plaintiff has failed to demonstrate an unofficial LVMPD policy that encourages or allows its
14 employees to illegally provide private information to unauthorized persons.  Even assuming that
15 Thomas obtained private information from an employee of LVMPD, that employee did so in direct
16 contravention of written, official LVMPD policy.  Thomas acknowledged that the LVMPD
17 employees who divulged the information did so against LVMPD rules (#38, Exhibit 3, p. 71).  The
18 LVMPD policy, "Dissemination of Criminal History Information," prohibits private information
19 leaks by its employees (#29, Exhibit D).
20     The affiant in support of LVMPD's Motion for Summary Judgment, Mike Snyder, avers that
21 the LVMPD actively enforces the policy, as evidenced by its discipline of twelve employees in the
22 past five years for violating the policy.  Id.  Plaintiff may have established a violation of LVMPD's
23 policy, but given LVMPD's demonstrated discipline of past violations of the policy, the alleged
24 violation in this case is insufficient to demonstrate a widespread, accepted practice.  Although
25 Plaintiff avers that Thomas received over 240 reports through SCOPE, a law enforcement database,
26

5

1  Thomas could not testify with certainty about which police department he obtained each of these
2  reports from (#38, Exhibit 3, p. 84-85).  Thomas averred that this SCOPE information could have
3  been obtained from a number of different police departments.  Id.

4        Accordingly, the evidence is insufficient to establish that LVMPD maintained an
5  unconstitutional "longstanding practice or custom which constitutes the 'standard operating
6  procedure' of the local governmental entity."  Jett, 491 U.S. at 737 (1989) (quoting Pembaur, 475
7  U.S. at 485-87 (White, J., concurring)).  The evidence does not show that the practice was so
8  widespread that it constituted a custom with the force of law at the LVMPD.  See City of St. Louis,
9  485 U.S. at 127.  Plaintiff's allegations, taken as true, demonstrate that some LVMPD officers have
10 violated the police department's policy.  While these allegations might support a § 1983 claim
11 against the offending officers, they do not support a finding that the practice was so widespread as to
12 constitute standard operating procedure at LVMPD.

13       **B. Policy-Making Authority**

14       Plaintiff has not alleged that a LVMPD employee with policy-making authority deprived him
15 of his rights.  Nor does the record demonstrate that a policy-making employee infringed upon
16 Plaintiff's constitutional rights.  Therefore, municipal liability cannot be founded upon this basis.

17       **C. A Person with Policy-Making Authority Ratified the Unconstitutional Behavior**

18       Plaintiff fails to demonstrate that an employee with policy-making authority ratified the
19 illegal dissemination of private information.  See Davis v. City of Ellensburg, 869 F.2d 1230, 1234
20 (9th Cir. 1989) (denying municipal liability where the plaintiff failed to present evidence that the city
21 acquiesced in unconstitutional behavior). Thomas averred in his deposition that he had friends in the
22 administration at LVMPD (#38, Exhibit 3, p. 67).  This testimony does not demonstrate that these
23 friends either provided SCOPE information to Thomas or knew about officers who did so.  It is not
24 enough to present evidence that demonstrates a mere possibility.  "If the evidence is merely
25 colorable, or is not significantly probative, summary judgment may be granted." Davis, 869 F.2d at

26                             6

1234 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (citations omitted)). Because the evidence in the record does not raise a genuine issue of material fact regarding a ratification of unconstitutional conduct at LVMPD, the Court grants summary judgment on this claim against LVMPD.

**IV.  State Law Claims**

    **A.  Tortious Invasion of Privacy**

The Court rejects Plaintiff's claim against LVMPD for tortious invasion of privacy because Plaintiff failed to establish an essential element of the tort: Public disclosure.  "To maintain a cause of action for public disclosure of private facts one must prove that a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities."  <u>Montesano v. Donrey Media Group</u>, 668 P.2d 1081, 1084 (Nev. 1983).

To make a public disclosure, one must do more than communicate private information to a single person or a small group of individuals.  <u>Kuhn v. Account Control Tech., Inc.</u>, 865 F.Supp 1443, 1448 (D.Nev. 1994) (quoting Restatement 2d (Second) of Torts §652D (1977)). Therefore, because the tort of invasion of privacy protects against *public* disclosure, the person making the disclosure must do so through public means.  According to Restatement (Second) of Torts §652, "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."  A comment to section 652 of the Restatement clarifies that private information is publicized when "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  <u>Id</u>.  at cmt. a. This includes "[A]ny publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made

in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section." Id.

Here, Plaintiff did not establish that his private information was publicly disclosed. Plaintiff has only established that the information was provided to a small group of individuals. There is no evidence in the record to support Plaintiff's allegation that the offending LVMPD employees provided the information to Thomas knowing that it would be made public. Because Plaintiff did not raise a genuine issue of material fact regarding a public disclosure of his private information, the Court grants summary judgment on Plaintiff's claim for tortious invasion of privacy against LVMPD.

### B. Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress claim against LVMPD fails as a matter of law. A plaintiff who seeks to make this claim must establish "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." Star v. Rabello, 625 P.2d 90, 92 (Nev. 1981). Plaintiff fails to raise a genuine issue of material fact regarding extreme and outrageous conduct on the part of LVMPD employees. The act of revealing private information is neither extreme nor outrageous conduct.

Nevada courts look to the RESTATEMENT (SECOND) OF TORTS for guidance in interpreting claims for intentional infliction of emotional distress ("IIED"). See, e.g., Star, 625 P.2d at 92, Olivero v. Lowe, 995 P.2d 1023, 1027 (Nev. 2000). According to RESTATEMENT (SECOND) TORTS § 46, cmt. d, behavior that is "tortious or even criminal" is not necessarily extreme and outrageous. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. The alleged conduct of Defendant LVMPD's employees may have been improper, but it was not extreme, outrageous, or atrocious.

1    For example, in Branda v. Sanford, the Nevada Supreme Court held that the plaintiff had sufficiently stated a claim for IIED where the plaintiff, a minor, alleged that the defendant "verbally accosted her with sexual innuendoes and became verbally abusive when she ignored his remarks." 637 P.2d 1223, 1224 (Nev. 1981). The defendant allegedly screamed expletives at the plaintiff at her place of work, allowing her co-workers and patrons to witness the incident. Id. The conduct in Grimsby v. Samson was even more extreme. 530 P.2d 291 (Wash. 1975). A doctor refused to treat a patient in a hospital, despite requests from the patient's husband to do so. As a result, the husband was forced to watch helplessly as his wife died in agony. Here, the LVMPD's alleged improper dissemination of Plaintiff's private information, especially in comparison with the cited cases, was neither extreme nor outrageous.

The Court also notes that Plaintiff was not even aware of the alleged information leak when it happened. It was only later, through discovery in the state court action, that Plaintiff learned about the distribution of his private information (#38, Exhibit 5, ¶3). In court decisions concluding that the conduct was sufficiently extreme and outrageous, the plaintiff was cognizant of the extreme and outrageous conduct while it was taking place. See e.g., Star v. Rabello, 625 P.2d 90, 92 (Nev. 1981), Grimsby, 530 P.2d 291, Branda, 637 P.2d 1223. In the instant action, however, Plaintiff was not contemporaneously aware of the alleged disclosure of private information. This distinction strongly supports the Court's finding that the alleged conduct was not extreme or outrageous.

Furthermore, Plaintiff has not sufficiently established that he suffered severe emotional distress. As has been cited by Plaintiff, "the less extreme the outrage (as in this case) the more appropriate it is to require evidence of physical injury or illness from the emotional distress." Alam v. Reno Hilton Corp., 819 F.Supp. 905, 911 (D.Nev. 1993). Because the alleged conduct of LVMPD's employees was not that extreme, the Plaintiff needed to submit strong proof of severe emotional distress. Plaintiff failed to do so.

The only piece of evidence submitted with respect to Plaintiff's emotional distress is an affidavit, wherein Plaintiff avers that he has experienced "extreme anxiety, constant fear for [his] family's safety, paranoia, and depression" (#38, Exhibit 5, ¶9). The Nevada Supreme Court rejected a similar claim where the plaintiff did not seek medical or psychiatric help and did not provide objectively verifiable evidence of emotional distress. Miller v. Jones, 970 P.2d 571, 577 (Nev. 1998). Because of the lack of evidence in Miller, that court held that the district court properly granted summary judgment. Id. Likewise, Plaintiff Quinn did not seek medical or psychiatric help, nor did he provide objectively verifiable evidence of his emotional distress. Because Plaintiff has not raised a genuine issue of material fact regarding extreme and outrageous conduct or sufficiently established that he experienced severe emotional distress, the Court grants summary judgment on Plaintiff's IIED claim against LVMPD.

### C. Respondeat Superior

Because the Court concludes that Plaintiff's state law claims against LVMPD fail as a matter of law, the Court need not address LVMPD's liability under the *respondeat superior* theory.

## V. "Doe Police Officers I-X"

Inasmuch as the Court grants summary judgment on all of Plaintiff's claims against LVMPD, the Court therefore grants summary judgment on Plaintiff's claims against "Doe Police Officers I-X" in their *official* capacities. This grant does not preclude any claims that Plaintiff may have against said police officers as individuals. Where the Federal Rules of Civil Procedure allow it, Plaintiff can always join newly discovered defendants. "If plaintiff later ascertains the names of additional persons he wishes to join as defendants, the Federal Rules of Civil Procedure provide a way of doing so." Tolefree v. Ritz, 382 F.2d 566, 567 (9th Cir. 1967).

///
///
///

10

## VI.  Punitive Damages Claim

Because the Court has dismissed Plaintiff's claims against LVMPD, Plaintiff failed to state a claim for punitive damages against LVMPD.  Accordingly, summary judgment is granted on this claim.

## VII.  Plaintiff's Rule 56(f) Request

The Court denies Plaintiff's Rule 56(f) request for a continuance because further discovery will not save Plaintiff's § 1983 and state law claims from summary judgment.  Plaintiff's counsel avers in an affidavit (#38, Exhibit 9) that additional time is needed for the depositions of Thomas, Osuch, and Detective Kai Degner.  Plaintiff plans to question these individuals regarding customs and policies of LVMPD on dissemination of information.  Id.  However, the Court has already received and considered evidence regarding LVMPD's policy with respect to dissemination of SCOPE information.  LVMPD has established that it maintains and enforces a policy that penalizes officers who improperly disseminate SCOPE information.  Even if further discovery reveals that both Degner and Osuch broke that policy, or that Thomas persuaded other employees to break that policy, given the past discipline of employees who violated that policy, this evidence would fail to establish the existence of a widespread, longstanding policy of LVMPD that allows or encourages the improper dissemination of its SCOPE information.  Therefore, further discovery will not augment Plaintiff's § 1983 claim against LVMPD.

Moreover, Plaintiff's state-law claims will not benefit from further discovery.  Plaintiff seeks to depose the above individuals regarding their "actions, motives, and knowledge" with respect to the dissemination of Plaintiff's personal information.  Id.  Because the Court concludes that the act of improperly revealing information to unauthorized persons is neither extreme nor outrageous, further testimony with regarding Plaintiff' IIED claim is unnecessary.  Furthermore, Plaintiff's claim for tortious invasion of privacy will not benefit from further testimony because the Court finds that no public disclosure took place, which is an essential element of the claim.  Therefore, further

discovery regarding that claim is not warranted.

**V. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant LVMPD's Motion for Summary Judgment (#29) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter **JUDGMENT** for Defendant LVMPD and against Plaintiff.

DATED this 28th day of July 2010

_____
Kent J. Dawson
United States District Judge